COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Elder, Frank, Humphreys, Clements, Kelsey, McClanahan,
                Haley, Petty and Beales
Argued at Richmond, Virginia


MATTHEW TREMAINE MOORE
                                                                            OPINION BY
v.        Record No. 2091-05-2                    JUDGE ELIZABETH A. McCLANAHAN
                                                                        DECEMBER 27, 2007
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Burnett Miller, III, Judge

        John B. Mann for appellant.

        Karen Misbach, Assistant Attorney General II (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        Matthew Tremaine Moore appeals his conviction, upon a conditional guilty plea, for

possession of cocaine with intent to distribute and possession of a firearm after having been

convicted of a felony.  Moore contends the trial court erred in denying his motion to suppress

evidence of these crimes because the officer who stopped him lacked probable cause to make a

warrantless traffic stop, in violation of Moore's Fourth Amendment rights.  A panel majority of

this Court reversed the decision of the trial court on different grounds.  We granted a petition for

rehearing *en banc* and stayed the mandate of the panel decision.[1]  Upon rehearing *en banc*, we

affirm the trial court.

_____

        [1] Our *en banc* order had the effect of vacating the panel opinion.  See Glenn v.
Commonwealth, 49 Va. App. 413, 423 n.3, 642 S.E.2d 282, 287 n.3 (2007) (*en banc*) (observing
that the "grant of *en banc* review vacates the prior panel opinion *in toto*" and thereby eliminates
the need to address the "differing views expressed by the panel majority and dissent"); see also

I.

The following facts are undisputed. Henrico County Police Officer W.T. Bryan stopped Moore's vehicle after observing a peeling inspection sticker on the windshield. Upon approaching the vehicle, Officer Bryan smelled marijuana. Officer Bryan then conducted a search of the vehicle and discovered various illegal drugs and a firearm. Moore was subsequently indicted for possession of cocaine with intent to distribute and possession of a firearm after having been convicted of a felony.

Moore moved to suppress the evidence seized from his vehicle, contending the stop was illegal under the Fourth Amendment. The trial court concluded the stop was legally justified under a reasonable articulable suspicion standard, and denied the motion. Moore subsequently entered a conditional guilty plea on the two possession charges referenced above, preserving his right to appeal the ruling on his motion.

II.

The question presented in Moore's petition for appeal is: "Did Officer Bryan have probable cause to make a traffic stop of the vehicle being driven by Moore on the sole basis that he observed that a valid inspection sticker was not totally affixed to the windshield of the vehicle?" On brief, Moore reiterates that "the issue in this appeal" is whether the officer had "probable cause" to conduct the traffic stop of Moore's vehicle. He further asserts on brief that "[t]he Supreme Court has held that an officer must have probable cause to believe a traffic violation to have occurred, only then can the officer have the right to conduct a traffic stop."

Moore sets forth the wrong legal standard that governs this case and also misstates the law. Whether an officer is justified in making an investigatory traffic stop is not governed by

Logan v. Commonwealth, 47 Va. App. 168, 170, 622 S.E.2d 771, 772 (2005) (*en banc*) (recognizing that, with an *en banc* order, we "set aside our panel opinion").

- 2 -

probable cause; rather, the officer's action is judged by the lesser standard of reasonable and articulable suspicion of criminal activity.  United States v. Arvizu, 534 U.S. 266, 273 (2003); Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 598 (2004); Shiflett v. Commonwealth, 47 Va. App. 141, 146, 622 S.E.2d 758, 760-61 (2005).

As no appeal was sought or granted on the issue of whether "the officer's action [was] supported by reasonable suspicion" of "legal wrongdoing" when making the traffic stop, Arvizu, 534 U.S. at 273, "we may not consider this issue on appeal" under Rule 5A:12(c).  Selph v. Commonwealth, 48 Va. 426, 434, 632 S.E.2d 24, 28 (2006) (holding assignment of error barred under Rule 5A:12(c)).  Rule 5A:12(c) provides that "[o]nly questions presented in the petition for appeal will be noticed by the Court of Appeals."  See Clifford v. Commonwealth, 274 Va. 23, 25, 645 S.E.2d 295, 297 (2007) (reversing decision of this Court based, in part, on application of Rule 5A:12(c)); Lay v. Commonwealth, 50 Va. App. 330, 336 n.3, 649 S.E.2d 714, 716 n.3 (2007) (explaining that under Rule 5A:12(c) "[w]e . . . do not answer [an] unasked question"); McLean v. Commonwealth, 30 Va. App. 322, 329, 526 S.E.2d 717, 720 (1999) (en banc) ("Only those arguments presented in the petition for appeal and granted by this Court will be considered on appeal." (citing Rule 5A:12(c))).  And unlike Rule 5A:18, Rule 5A:12(c) contains no "good cause" or "ends of justice" exception to the prohibition of addressing issues outside the scope of the question presented.  See Thompson v. Commonwealth, 27 Va. App. 620, 626, 500 S.E.2d 823, 826 (1998); see also Selph, 48 Va. App. at 434, 632 S.E.2d at 28.

For these reasons, we affirm Moore's convictions.

Affirmed.

Humphreys, J., concurring.

I entirely join in the analysis and judgment of the majority and I write separately solely to emphasize the rationale for Rule 5A:12(c) and the necessity for adherence to it.

As Judge Elder points out in his dissent, counsel for the appellant alleged in the trial court that Officer Bryan lacked "probable cause or a reasonable suspicion of criminal activity to conduct a stop of the vehicle operated by Matthew Moore." Although phrased in the disjunctive in the trial court, it was apparent to me from appellant's brief and *en banc* oral argument, that appellant's counsel was erroneously using the distinctively different terms of constitutional art - "probable cause" and "reasonable suspicion" - interchangeably. See United States v. Arvizu, 534 U.S. 266, 273 (2002). This perhaps explains appellant's failure to allege as error in his issue presented, the actual legal standard relied upon by the trial court. However, such an explanation cannot operate as an excuse.

Some might suggest our disposition of this case is an overly technical application of our Rules. However, under the constitutional and statutory scheme under which we operate, we must decide cases based upon the issues appellants present to us, not the issues they might or should have presented. At both the trial and appellate level, our system of justice is inherently an adversarial system and the courts may not properly assume the role of an advocate for either party.

The rule of law can only exist if laws are administered fairly, rationally, predictably, consistently, and impartially. Our entire judicial system is premised upon the notion that, only a party acting *pro se* or a professional attorney, making strategic and tactical decisions as an advocate and theoretically in the client's best interest, may frame the issues the courts must resolve. To second guess counsel for the parties and substitute our collective judgment to re-frame issues in a way that may better serve the appellate interest of one of the parties, would

necessarily call into question our objectivity and impartiality with respect to both the other party and the public generally.

Accordingly, we have no alternative but to affirm the judgment of the trial court for the reasons more fully stated in the majority opinion.

Petty, J., concurring in the result.

The majority opinion and Judge Humphreys' concurring opinion both make a very valid point regarding both the application and purpose of Rule 5A:12(c) as well as our obligation to ensure that appellants adhere to our Rules. It is a point with which I would typically agree. However, in this case I believe that we can decide the basic question presented by the appellant – whether the trial court erred in denying the motion to suppress – without doing harm to the purpose or effect of Rule 5A:12.

While it is clear that appellant employed the irrelevant probable cause standard in his question presented, it is also clear that all parties involved in this case addressed the relevant standard of reasonable suspicion in arguing and deciding the case. The defense attorney as well as the Commonwealth's attorney identified the appropriate standard in their arguments to the trial court. The trial court obviously understood those arguments, commenting that "it basically boils down to whether or not the officer had a reasonable articulable suspicion . . . . " In his opening brief, appellant argued that the officer had neither probable cause nor reasonable suspicion to justify the stop. The Attorney General understood the issue, rephrased the question presented to state the correct constitutional standard, and went on to address it. In a published decision, a panel of this Court decided the case on the merits. Finally, we never asked appellant to address the issue at oral argument. Simply put, at no time prior to our decision did the form of the question presented raise any concern.

This case presents the rare occasion in which I believe that we should exercise our inherent authority to expand the question presented and decide the issue argued -- whether the stop of the appellant's car was in violation of the Fourth Amendment to the United States Constitution. For that reason, I do not join in the reasoning of the majority.

I do, however, agree with the conclusion reached by the majority.  For the reasons stated by the dissent in the panel decision, <u>Moore v. Commonwealth</u>, 49 Va. App. 294, 308-11, 640 S.E.2d 531, 538-39 (McClanahan, J., dissenting), <u>reh'g en banc granted by</u> <u>Moore v. Commonwealth</u>, 49 Va. App. 497, 642 S.E.2d 769 (2007), I would affirm the ruling of the trial court.

Elder, J., with whom Felton, C.J., and Beales, J., join, dissenting.

It is undisputed that, in the proceedings before the trial court, Moore's argument expressly included the assertion that Officer Bryan did not have "probable cause or a reasonable suspicion of criminal activity to conduct a stop of the vehicle operated by Matthew Moore" based solely on the fact that "the inspection sticker on the vehicle was not fully attached to the windshield." Thus, Moore properly preserved for appeal under Rule 5A:18 the dispositive issue of whether Officer Bryan had the reasonable suspicion necessary to validate the stop.

Although the majority does not dispute that Rule 5A:18's contemporaneous objection requirement has been satisfied, it concludes Moore's statement of his question presented—which contended the stop was unreasonable based on a lack of probable cause without reference to the controlling legal standard of reasonable suspicion—failed to satisfy Rule 5A:12(c). I disagree with the majority's application of Rule 5A:12(c), which the majority has raised for the first time *sua sponte* following argument on rehearing *en banc*. The Commonwealth posed no Rule 5A:12(c) objection at any stage of these proceedings, including on rehearing *en banc*; rather it merely restated the question presented so that it included the proper legal standard of reasonable suspicion rather than probable cause and proceeded to make argument on this issue. Further, I believe the majority interprets Rule 5A:12(c) too narrowly. Contrary to the majority's holding, I would conclude the trial court's ruling that Officer Bryan had the reasonable articulable suspicion necessary to conduct the stop was properly before us under Rule 5A:12(c).

Rule 5A:12(c) provides that "[o]nly questions presented in the petition for appeal will be noticed by the Court of Appeals." Here, Moore noted a timely appeal on the question presented, "Did Officer Bryan have probable cause to make a traffic stop of the vehicle being driven by Moore on the sole basis that he observed that a valid inspection sticker was not totally affixed to the windshield of the vehicle?" This question presented was specific enough to allow the

- 8 -

Commonwealth and this Court to focus on the relevant issue—whether the trial court's denial of the motion to suppress was error—such that the purpose of Rule 5A:12(c) has been met. The Commonwealth clearly understood the relevant issue and—without objection, as stated above—simply rephrased the question presented to include the proper legal standard. Had Moore's assignment of error in fact been worded more generally to allege that the trial court's denial of the motion to suppress was error, without including any reference to reasonable suspicion or probable cause, it would be undisputed that the requirement of Rule 5A:12(c) had been met. This stands in marked contrast to a situation in which we grant a petition for appeal challenging the sufficiency of the evidence to prove one element of a crime and the appellant later attempts to challenge the sufficiency of the evidence to prove a different element of the offense. See Selph v. Commonwealth, 48 Va. App. 426, 434, 632 S.E.2d 24, 28 (2006); see also Clifford v. Commonwealth, 274 Va. 23, 24-26, 645 S.E.2d 295, 296-97 (2007) (involving one objection at trial to limits on cross-examination, that Clifford should be allowed to cross-examine victim about her prior sexual contact leading to prosecution of a different defendant in order to show victim had access to law enforcement authorities but did not make contemporaneous report of Clifford's sexual contact, and a wholly different statement of error on petition for appeal, that Clifford had made a threshold showing of a "reasonable probability of falsity" necessary to cross-examine victim about victim's prior false accusations against another under an exception to the rape-shield law). Here, the question whether reasonable suspicion for the stop existed was subsumed within the probable cause assignment of error because the same evidence was involved and the only difference in the legal analysis was whether that evidence met the "lesser" legal standard of reasonable suspicion rather than the "greater" legal standard of probable cause.

Further, we have expressly held that "the text of [Rule 5A:12(c)] does not prevent this Court, in its discretion and pursuant to its inherent authority, from considering . . . additional

issues as long as the Court has acquired jurisdiction over the appeal via timely filing of the original petition for appeal." Riner v. Commonwealth, 40 Va. App. 440, 455, 579 S.E.2d 671, 678-79 (2003) (citation omitted), aff'd on other grounds, 268 Va. 296, 601 S.E.2d 555 (2004). To the extent the wording of Moore's assignment of error was not specific enough to place the issue of reasonable suspicion before us, I believe our consideration of the reasonable suspicion issue at the panel stage constituted an enlargement of the scope of the issues on which we granted appellant's petition for appeal. As set out above, the Commonwealth posed no objection to that consideration and, in fact, rephrased the question presented to set out the proper legal standard before arguing on brief why the trial court's denial of the motion to suppress should be affirmed.

Thus, I would reach the merits of appellant's reasonable suspicion argument. Further, for the reasons set out in the panel majority decision in this case, see 49 Va. App. 294, 300-308, 640 S.E.2d 531, 534-38 (2007), I would reverse appellant's convictions. Accordingly, I respectfully dissent.

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **3rd** *day of* **April, 2007**.

Matthew Tremaine Moore,                                                                                    Appellant,

 against            Record No. 2091-05-2
                   Circuit Court Nos. CR05-1635 and CR05-1636

Commonwealth of Virginia,                                                                              Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On February 26, 2007 came the appellee by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on February 13, 2007, and grant a rehearing *en banc* thereof.

On consideration whereof, the petition for rehearing *en banc* is granted, the mandate entered herein on February 13, 2007 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

Notwithstanding the provisions of Rule 5A:35, the following briefing schedule hereby is established:  Appellant shall file an opening brief upon rehearing *en banc* within 21 days of the date of entry of this order; appellee shall file an appellee's brief upon rehearing *en banc* within 14 days of the date on which the opening brief is filed; and appellant may file a reply brief upon rehearing *en banc* within 14 days of the date on which the appellee's brief is filed.  The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

                                                                  Cynthia L. McCoy, Clerk
By:

                                                                  Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge McClanahan and Senior Judge Fitzpatrick
Argued by teleconference


MATTHEW TREMAINE MOORE
                                                    OPINION BY
v.      Record No. 2091-05-2        CHIEF JUDGE WALTER S. FELTON, JR.
                                                    FEBRUARY 13, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Burnett Miller, III, Judge

John B. Mann (John B. Mann, P.C., on briefs), for appellant.

Karen Misbach, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


        Matthew Tremaine Moore (appellant) appeals his convictions, following his conditional

pleas of guilty, for possession of cocaine with the intent to distribute in violation of Code § 18.2-248

and possession of a firearm after having been convicted of a felony in violation of Code

§ 18.2-308.2.  He argues the trial court erred in denying his motion to suppress evidence obtained

during an investigatory stop of his vehicle, based solely on an observation by the arresting officer

that an otherwise valid inspection sticker was partially "peeling" away from the vehicle's

windshield.  For the following reasons, we reverse the judgment of the trial court.

## I.  BACKGROUND

        When we review a trial court's denial of a suppression motion, "[w]e view the evidence in a

light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly

deducible from that evidence."  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d

47, 48 (1991) (citation omitted).  "[W]e are bound by the trial court's findings of historical fact

unless 'plainly wrong' or without evidence to support them."  McGee v. Commonwealth, 25

Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996)). "However, we consider *de novo* whether those facts implicate the Fourth Amendment, and if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." <u>Hughes v. Commonwealth</u>, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2002) (*en banc*) (citing <u>McGee</u>, 25 Va. App. at 198, 487 S.E.2d at 261).

At 3:30 p.m. on February 15, 2005, Officer Bryan of the Henrico County Police Department was sitting in a marked police vehicle parked in a grocery store parking lot, facing Cool Lane, "a foot or two off the roadway." Officer Bryan saw a white 2001 Ford drive past his position, some five feet away. He observed that a portion of a valid inspection sticker[1] on the Ford's windshield was partially peeling from the windshield. Officer Bryan testified that based on his experience, an inspection sticker not fully attached to a vehicle's windshield often "did not belong on that car." He initiated a traffic stop of the vehicle to further investigate the inspection sticker.

Prior to initiating the traffic stop of the Ford, Officer Bryan "ran" the vehicle's license plates and learned that the vehicle was a rental car with valid plates and registration. He testified that the sole reason he stopped the vehicle was because the valid inspection sticker was partially peeling from the windshield. When he approached the vehicle to speak with its driver, he smelled marijuana emanating from the vehicle's interior. Appellant, the Ford's driver, admitted he had been smoking marijuana in the vehicle. During his subsequent search of the vehicle, Officer Bryan recovered marijuana, cocaine, heroin, digital scales, and an operable firearm.

At a pretrial hearing, appellant moved to suppress the evidence obtained as a result of the stop, contending the stop violated his Fourth Amendment rights because the manner by which the valid inspection sticker was affixed to the windshield did not give rise to a reasonable articulable

---

[1] The valid inspection sticker expired in June 2005, three and one-half months after the stop.

suspicion that the sticker on the Ford was not validly on that car. Officer Bryan testified that he had stopped *approximately* 50 cars within the previous six months for improper inspection stickers and *30 to 35* of those vehicles possessed invalid inspection stickers. He explained the nature of those stops during cross-examination:

> DEFENSE COUNSEL: So basically in your testimony, you said in the last six months you stopped approximately fifty cars and you said that thirty to thirty-five per cent of the cars had – the inspection stickers may have been from another vehicle? Is that what you're saying
> ?
> OFFICER BRYAN: No, sir. Thirty to thirty-five of the vehicles, out of the fifty, had bad inspection stickers.
>
> DEFENSE COUNSEL: All right. That were valid or invalid?
> OFFICER BRYAN: Invalid.
>
> DEFENSE COUNSEL: Now – so in other words, that would be sixty to seventy per cent of the cars?
>
> OFFICER BRYAN: Approximately.
>
> DEFENSE COUNSEL: And the other thirty – thirty to forty per cent had valid stickers. They had just – the glue had come loose?
>
> OFFICER BRYAN: Yes, sir.[2]

When asked how many vehicles he stopped during the past twelve to eighteen months, he responded that he "*guess[ed]* it would be a hundred vehicles" and that the "*majority*" of the stops turned out to be for inspection sticker related infractions.

The trial court overruled appellant's motion to suppress, finding that

> the [inspection] sticker was peeling off, and the officer having had the experience that he had, would subjectively raise an appropriate suspicion in his mind, that this sticker could have been stolen or otherwise inappropriate.

---

[2] The statement of the trial court appearing in the text of the dissent came during the *direct* examination of Officer Bryan following an objection by defense counsel that the Commonwealth failed to establish a foundation for the line of questioning it was pursuing.

Appellant subsequently entered conditional pleas of guilty for possession of cocaine with the intent to distribute and possession of a firearm after having been convicted of a felony, preserving his right to appeal the trial court's denial of his motion to suppress the evidence obtained as a result of the investigatory stop.

## II.  ANALYSIS

Appellant asserts the investigatory stop violated his Fourth Amendment right to be free from unreasonable seizure because it was "neither supported by probable cause that a traffic violation had occurred or reasonable articulable suspicion that criminal activity was afoot."  Specifically, he contends Officer Bryan's observation that the vehicle's inspection sticker "was not totally affixed to the windshield" amounted to no more than a mere "hunch that there might be a problem with the vehicle['s] inspection sticker."  Such a hunch, he argues, does not justify the stop of a motor vehicle. We agree.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968); United States v. Cortez, 449 U.S. 411, 417 (1981)).  "Because the 'balance between the public interest and the individual's right to personal security,' United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975), tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'"  Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).  Thus, "[a] police officer may conduct an investigatory stop of a motor vehicle if he has at least 'articulable and reasonable suspicion' that the operator is unlicensed, the vehicle is unregistered, or the vehicle or an occupant is otherwise subject to seizure for violating the law." Reel v. Commonwealth, 31 Va. App. 262, 265-66, 522 S.E.2d 881, 883 (2000) (citing Delaware v.

Prouse, 440 U.S. 648, 663 (1979); Murphy v. Commonwealth, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989)).

"Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." Alabama v. White, 496 U.S. 325, 330 (1990). "There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop." Reel, 31 Va. App. at 266, 522 S.E.2d at 883. Instead, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." Arvizu, 534 U.S. at 273 (quoting Cortez, 449 U.S. at 417-18). While this standard "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person,'" id. (quoting Cortez, 449 U.S. at 418), "[i]f the officer's suspicion amounts merely to an 'inchoate and unparticularized suspicion or "hunch[,]" . . . [rather] than a fair inference in the light of his experience, [it] is simply too slender a reed to support the seizure' under the [F]ourth and [F]ourteenth [A]mendments of the United States Constitution." Murphy, 9 Va. App. at 144, 384 S.E.2d at 128 (quoting Reid v. Georgia, 448 U.S. 438, 441 (1980)).

Here, Officer Bryan concedes he stopped appellant's vehicle *solely* because of his brief observation that a portion of the vehicle's otherwise valid inspection sticker was not completely affixed to the windshield.[3] As part of its highway safety program, Virginia requires motor vehicles registered in the Commonwealth to be inspected annually for mechanical and equipment defects at an official inspection station. See Code §§ 46.2-1157, 46.2-1158. If no mechanical or equipment defects are discovered, the official inspection station must place an approval sticker

---

[3] The officer testified at appellant's suppression hearing that he did not observe appellant committing a traffic infraction, or otherwise violating an equipment regulation.

on the windshield of the vehicle.[4]  Code § 46.2-1163.  Failure to comply with the annual inspection requirement constitutes a traffic infraction.  See Code §§ 46.2-1157, 46.2-1163.  Additionally, it is unlawful to display an official state inspection sticker that was issued for another vehicle or is known to be counterfeit.  Code § 46.2-1173.

In Prouse, 440 U.S. 648, the United States Supreme Court recognized the states' vital interest in ensuring that motor vehicles are fit for safe operation.[5]  However, it noted that "[t]he 'grave danger' of abuse of discretion does not disappear simply because the automobile is subject to state regulation resulting in numerous instances of police-citizen contact."  Id. at 662 (citations omitted).  Thus, the Court held that the

> marginal contribution to roadway safety possibly resulting from a system of spot checks cannot justify subjecting every occupant of every vehicle on the roads to a seizure – limited in magnitude compared to other intrusions but nonetheless constitutionally cognizable – at the *unbridled discretion* of law enforcement officials.  To insist neither upon an appropriate factual basis for suspicion directed at a particular automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion "would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches . . . ."

---

[4] The regulations governing the placement of inspection stickers provide that

> the sticker is to be placed at the bottom of the windshield so that the inside or left edge of the sticker is one inch to the right of the vertical center of the windshield when looking through the windshield from the inside of the vehicle.

19 Va. Admin. Code § 30-70-50.

[5] See Prouse, 440 U.S. at 658 ("We agree that the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed. . . . Unquestionably, these provisions, properly administered, are essential elements in a highway safety program.").

Id. at 661 (quoting Terry, 392 U.S. at 22) (emphasis added).  Accordingly, the Court determined that because many violations of minimum vehicle-safety requirements are immediately observable, it is unnecessary to stop vehicles *merely* to ascertain compliance with a state's registration and vehicle-safety requirements.  Id. at 660 (emphasis added).

Our holdings in Reel and Commonwealth v. Spencer, 21 Va. App. 156, 462 S.E.2d 899 (1995), illustrate the principles articulated in Prouse.  In Reel, we concluded that, under the totality of the circumstances, observation of a rejection sticker is sufficiently specific and objective to provide a reasonable and articulable suspicion of legal wrongdoing.  31 Va. App. at 268, 522 S.E.2d at 885.  We reasoned that, "when an officer sees a vehicle being operated with a rejection sticker, he [immediately] knows the vehicle has been determined to have defective equipment, and this knowledge provides reasonable suspicion for the officer to conduct an investigatory stop to determine whether the defective equipment has been repaired."  Id.

In Spencer, we held that "the lack of a city or county decal, without more, was insufficient to justify [an investigatory] stop of [a] vehicle."  21 Va. App. at 160, 462 S.E.2d at 901.  There, we found that, because the officers knew other jurisdictions in the state did not require decals, the absence of a city or county decal, standing alone, did not constitute a specific and objective fact indicating that the vehicle was in violation of a local ordinance.  We noted that, had the officers confirmed that the vehicle in question was registered in a jurisdiction requiring a decal prior to initiating the stop, the officers would have had a specific and objective basis for stopping the vehicle.  We concluded, therefore, that the "benefit gained from stopping individual vehicles without decals is marginal when compared to the constitutional rights of drivers and their passengers who are seized."  Id.

Similar to the officers in Reel and Spencer, Officer Bryan relied on a single factor to justify stopping appellant's vehicle – his brief observation of a partially peeling, but otherwise

valid, inspection sticker.  Unlike the rejection sticker in <u>Reel</u>, however, the appearance of appellant's partially peeling, but otherwise valid inspection sticker did not immediately identify the vehicle as being in violation of a vehicle-safety requirement or Code § 46.2-1173.  Virginia's vehicle-safety regulations prescribe the location on the windshield inspection stickers must be affixed.  However, we find no specifications in these regulations as to the manner in which such stickers must be attached.  The only requirement is that the expiration date of the sticker must be clearly visible.  Because the inspection sticker was lawful on its face, our holding in <u>Spencer</u> mandates that more information was required in order for Officer Bryan to formulate a particularized and objective suspicion that the sticker had been unlawfully transferred or was counterfeit in violation of Code § 46.2-1173.

Furthermore, Code § 46.2-1164 provides that a valid inspection sticker may be removed from a vehicle's broken windshield and reattached to the vehicle's new windshield without submitting the vehicle to re-inspection.  This provision is also silent as to the means by which an inspection sticker is to be re-attached to a vehicle's new windshield.  A logical consequence of such a legislatively sanctioned transfer is that the inspection sticker's glue may not fully affix to the new windshield, causing the sticker to appear to be "peeling" from the windshield.

Accordingly, because there is no requirement that an inspection sticker must be completely affixed to a vehicle's windshield, we conclude that a "peeling" inspection sticker is not, in and of itself, unlawful.  Nor does it, standing alone, constitute a particularized and objective fact that gives rise to a reasonable articulable suspicion that the sticker has unlawfully been transferred from another vehicle or is otherwise counterfeit in violation of Code § 46.2-1173.

We recognize that "the mere fact that particular conduct may be susceptible of an innocent explanation does not [automatically] establish a lack of reasonable suspicion."  <u>United</u>

States v. Perkins, 363 F.3d 317, 326 (4th Cir. 2004), cert. denied, 534 U.S. 1056 (2005). See also Arvizu, 534 U.S. at 277 ("A determination that reasonable suspicion exists[] [] need not rule out the possibility of innocent conduct." (citing Illinois v. Wardlow, 528 U.S. 119, 125 (2000))). However, where particular conduct is, on its face, lawful or at least susceptible to a legitimate explanation, the Fourth Amendment requires the presence of additional factors that, under the totality of the circumstances, objectively point to legal wrongdoing. See Spencer, 21 Va. App. 156, 462 S.E.2d 899. See also Brignoni-Ponce, 422 U.S. 873 (apparent Mexican ancestry of vehicle's occupants, standing alone, insufficient to furnish border patrol agent with a reasonable articulable suspicion that occupants were illegal aliens because "[l]arge numbers of native-born and naturalized citizens have the physical characteristics identified with Mexican ancestry").

In Brignoni-Ponce, the United States Supreme Court noted that there are "[a]ny number of factors [that] may be taken into account in deciding whether there is a reasonable suspicion to stop a car in the border area," including the fact that a person appears to be of Mexican ancestry. Id. at 884. However, it held that while "[t]he likelihood that any given person of Mexican ancestry is an alien is high enough to make Mexican appearance a *relevant factor*, [] standing alone it does not justify stopping all Mexican-Americans to ask if they are aliens." Id. at 886-87 (emphasis added).

The same can be said of partially peeling inspection stickers. It is unquestionable that the "peeling" appearance of a valid inspection sticker is a relevant factor in determining whether the sticker was unlawfully transferred from another vehicle. However, because a partially peeling inspection sticker is not unlawful, it does not justify, without some additional indicia of legal wrongdoing, stopping all vehicles displaying valid inspections stickers that are not completely affixed to their windshields. Trial courts must consider the totality of *all* of the circumstances surrounding a stop of a vehicle, including whether a relevant factor may have a legitimate

explanation, when determining whether an officer had a reasonable articulable suspicion, based on particularized and objective facts, to stop a vehicle.

In this case, Officer Bryan relied on a single factor to justify stopping appellant's vehicle – the vehicle's partially peeling, but otherwise valid, inspection sticker. He testified that he suspected appellant's partially peeling inspection sticker could belong to another car because he had stopped approximately 50 vehicles within the previous six months and approximately 30 to 35 of those vehicles had invalid, as opposed to valid and partially peeling, inspection stickers.[6]

After considering Officer Bryan's testimony, the trial court ruled that his experience with inspection sticker violations "subjectively raise[d] an appropriate suspicion in his mind[] that th[e] [peeling] sticker could have been stolen or otherwise inappropriate." In so doing, the trial court ignored the prescriptions of Spencer and Brignoni-Ponce that a single factor, lawful in and of itself, is insufficient to furnish reasonable articulable suspicion.[7] Moreover, the record

---

[6] We also note that the record contains no evidence of when, where, or under what circumstances Officer Bryan made these stops.

[7] Our Supreme Court recently observed that it has

> consistently declined to find that probable cause can be established solely on the observation of material which can be used for legitimate purposes, even though the experience of an officer indicates that such material is often used for illegitimate purposes. To support a finding of probable cause, such observations must be combined with some other circumstances indicating criminal activity.

Brown v. Commonwealth, 270 Va. 414, 420-21, 620 S.E.2d 760, 763 (2005). There, the Court determined the trial court had erroneously denied the defendant's motion to suppress evidence because, upon consideration of the totality of the circumstances, the investigating officer's observation of the defendant sleeping in a parked car with a hand-rolled cigarette in his hand was insufficient by itself to establish probable cause to arrest him for possession of marijuana.
    Although reasonable suspicion imposes a less stringent requirement to effect a Fourth Amendment seizure than does probable cause, we find the principles articulated in Brown persuasive because both legal standards require reviewing courts to objectively consider the "totality of the circumstances." See Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981) (whether probable cause exists depends upon "what the totality of the

reflects that Officer Bryan's experience with both invalid and partially peeling, but otherwise valid, inspection stickers "did not attach with any particularity" to appellant's partially peeling, but otherwise valid inspection sticker or to appellant himself. Harris v. Commonwealth, 262 Va. 407, 416, 551 S.E.2d 606, 611 (2001).[8]

Under the record presented to us in this case, Officer Bryan's observation of appellant's partially peeling inspection sticker, without more, amounted to nothing more than an inchoate and unparticularized "hunch" that the inspection sticker did not belong to appellant's vehicle. Such a "hunch" is too slender a reed to justify an investigatory stop under the Fourth Amendment. Murphy, 9 Va. App. at 144, 384 S.E.2d at 128. "Upholding a stop on these facts would permit [] [law enforcement] to make a random, suspicionless stop of any car with a [partially peeling inspection sticker]. The Fourth Amendment does not afford the police such unbridled discretion." United States v. Wilson, 205 F.3d 720, 724 (4th Cir. 2000) (citing Prouse, 440 U.S. at 663).

Accordingly, we reverse the trial court's denial of appellant's motion to suppress the evidence seized during the investigatory stop of his vehicle, and remand for further proceedings if the Commonwealth be so advised.

Reversed.

---

circumstances means to police officers trained in analyzing the observed conduct for purposes of crime control" (citations omitted)).

[8] Even assuming, *arguendo*, that Officer Bryan was suspicious that the otherwise valid inspection sticker did not belong on the vehicle appellant was driving, surely that suspicion would have dissipated when, prior to initiating the traffic stop, he learned from his computer check that the vehicle was a validly licensed and registered rental car.

McClanahan, J., dissenting.

I disagree that Officer Bryan had no "'particularized and objective basis' for suspecting legal wrongdoing" to justify the investigatory traffic stop. United States v. Arvizu, 534 U.S. 266, 273 (2003). In my opinion, reasonable articulable suspicion was established by evidence of both the officer's observation of the peeling inspection sticker and "[his] own experience and specialized training to make inferences from and deductions about [that] information available to [him] that 'might well elude an untrained person.'" Id. (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

I do not read the applicable case law as holding that the presence or absence of reasonable articulable suspicion may be determined by counting the number of "factors" presented for justifying the stop. There are "no [such] bright line rules to follow" when making that determination. Reel v. Commonwealth, 31 Va. App. 262, 266, 522 S.E.2d 881, 883 (2000). Nevertheless, Officer Bryan did not rely only on a single factor to justify stopping appellant's vehicle—the partially peeling inspection sticker. The officer also articulated in detail why he was suspicious based on his recent experience.[9] See Logan v. Commonwealth, 19 Va. App. 437, 442, 452 S.E.2d 364, 368 (1994) ("[W]e agree with the Commonwealth that if a broken window is suggestive of a prior theft, it is just as suggestive of what the officers suspected it might be in this case, a theft in progress."). Indeed, in light of that experience, it was *more likely than not* that the peeling inspection sticker was not lawfully attached to appellant's vehicle—the officer having found the same violation in 30 to 35 out of approximately 50 vehicles he had

---

[9] It is important to note that "an investigatory stop under Terry 'anticipates that some innocent people may be stopped. Nevertheless, it is a lawful stop designed to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion." Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001) (citing Illinois v. Wardlow, 528 U.S. 119, 126 (2000)); see Shiflett v. Commonwealth, 47 Va. App. 141, 146, 622 S.E.2d 758, 760 (2005).

stopped in the previous six months.[10]  The officer's testimony on this issue does not pertain to something other than peeling stickers located on the wrong vehicles.  The import of the officer's entire testimony, in context, was that he found such to be the case with each of those 30 to 35 vehicles.  As the trial court explained,

> what he's telling me is that [in the instant case] he felt it was a problem, because he had stopped many cars before, that have had *stickers coming off*, and in the majority of those *he's found that the sticker didn't go to that car*.  So it goes to the issue of whether or not there's reasonable suspicion.[11]

(Emphasis added).

---

[10] Given the likelihood that the stop would reveal unlawful activity, it certainly meets a reasonable articulable suspicion standard when it may very well meet a heightened probable cause standard.  See, e.g., United States v. Limares, 269 F.3d 794, 798 (7th Cir. 2001) (holding that probable cause was clearly established when the record showed that the drug sniffing dog had been right sixty-two percent of the time); see generally, Ronald J. Bacigal, Making the Right Gamble:  the Odds on Probable Cause, 74 Miss. L.J. 279, 313 (2004-05) (In analyzing the level of certainty required for probable cause under the Fourth Amendment, Professor Bacigal concludes that "statistical evidence is readily available in many cases and should be utilized whenever it exists.").

[11] On direct examination, the officer testified that he was concerned when he saw the peeling inspection sticker on Moore's vehicle, thinking "it was possibly an improper inspection sticker, that did not belong on that car."  That was because, "[b]ased on [his] experience, [he] had] stopped numerous vehicles for this offense and found a great majority of the time that the inspection sticker, *that will be peeling off the window*, does not belong on that vehicle." (Emphasis added.)  He proceeded to explain that in the previous six months, he had stopped approximately 50 vehicles for that type of violation and 30 to 35 "resulted in finding a sticker that was not supposed to be with the car [he] stopped."  The officer further explained that "[a] new sticker typically does not peel off of a windshield on its own."

In the limited exchange on cross-examination addressing this issue, quoted by the majority, defense counsel misstates the officer's testimony on direct, when counsel asks, "So basically in your testimony, you said in the last six months you stopped approximately fifty cars and you said that thirty to thirty-five per cent of the cars had—the inspection stickers may have been from another vehicle?  Is that what you're saying?"  The officer responded, "No, sir.  Thirty to thirty-five of the vehicles, out of the fifty, had bad inspection stickers" and thus the stickers were "invalid."  Counsel then confirmed with the officer that, "in other words," he was stating that "sixty to seventy per cent of the cars" had inspection stickers from other vehicles and that "*the glue had [just] come loose' on the other . . . thirty to forty per cent [that turned out to have] valid stickers*." (Emphasis added.)

- 13 -

In <u>Delaware v. Prouse</u>, 440 U.S. 648 (1979), the United States Supreme Court held a police officer's random traffic stop of a vehicle and detention of the driver for the sole purpose of checking his driver's license and vehicle registration, without first observing "any suspicious activity," whatsoever, was an unreasonable seizure in violation of the Fourth Amendment.  <u>Id.</u> at 650.  In doing so, the Court recognized that licensing, registration, and vehicle inspection requirements "are essential elements in a highway safety program," through which a state may ensure that the drivers on its highways are qualified and that their vehicles are fit to operate.  <u>Id.</u> at 658.  The question, however, as framed by the Court, was "whether in the service of these important ends the discretionary spot check is a sufficiently productive mechanism to justify the intrusion upon Fourth Amendment interests which such stops entail."  <u>Id.</u> at 659.  Deciding it was not, the Court reasoned:

> It seems common sense that the percentage of all drivers on the road who are driving without a license is very small and that the number of licensed drivers who will be stopped in order to find one unlicensed operator will be very large indeed.  The contribution to highway safety made by discretionary stops selected from drivers generally will therefore be marginal at best.

<u>Id.</u> at 660-61.  The Court thus concluded that, "[i]n terms of actually discovering unlicensed drivers or deterring them from driving, the [random, discretionary] spot check does not appear sufficiently productive to qualify as a reasonable law enforcement practice under the Fourth Amendment."  <u>Id.</u> at 661.

In contrast, the stop in the instant case was particularized by the officer's observation of the peeling sticker on the windshield, and in light of his recent experience he was likely to discover an inspection sticker violation upon making the stop.  Thus, the stop was not "random," "suspicionless" or an exercise in "unbridled discretion" in violation of appellant's Fourth Amendment rights.

For these reasons, I would affirm the decision of the trial court denying appellant's motion to suppress.  Therefore, I dissent.