UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Alston, Chafin and Decker
Argued at Norfolk, Virginia


JERRY LEE GIBBS

MEMORANDUM OPINION* BY
v.      Record No. 1115-16-1      JUDGE MARLA GRAFF DECKER
JUNE 6, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Walter J. Ford, Judge Designate[1]

Anthony J. Balady, Jr., Assistant Public Defender, for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Jerry Lee Gibbs appeals his conviction for driving after being adjudicated a habitual

offender, in violation of Code § 46.2-357.  He contends that the traffic stop that led to the

discovery of his offense was unreasonable under the Fourth Amendment of the Constitution of

the United States.  He concludes that, consequently, the trial court should have granted his

motion to suppress evidence.  We hold that the trial court did not err in denying the motion.

Accordingly, we affirm the conviction.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Wilford Taylor, Jr., ruled on the motion to suppress.

## I. BACKGROUND[2]

On February 4, 2015, Trooper Jason Vaughters of the Virginia Department of State Police saw that a car driven by the appellant had an inspection sticker that was "excessively taped" to the windshield with "heavy" clear tape on each corner.[3] He also noticed that the sticker was dirty. Vaughters explained that he considered these observations significant because inspection stickers are self-adhesive and usually clean, but if one is taken off of a windshield and then used again, the adhesive "catches dirt." He also testified that a new sticker "will stick to the windshield until it's taken off." Vaughters suspected that someone had removed the sticker from another vehicle and placed it on the car driven by the appellant.

Trooper Vaughters testified that he thought that the inspection sticker was suspicious based on "several instances of that and dealing with counterfeit stickers" during his five years of experience as a law enforcement officer. Specifically, Vaughters said that he had conducted "thousands" of traffic stops and had encountered vehicle inspection stickers held on with tape approximately fifty or sixty times. He explained that he worked in traffic enforcement and looked at the inspection sticker of almost every vehicle that passed him on the roadway. Vaughters also testified that he could not verify the legality of the inspection sticker on the car driven by the appellant without making a traffic stop.

Based on his suspicion that the inspection sticker was unlawful, the trooper stopped the car. He asked the appellant for his driver's license. During the encounter, Vaughters learned

---

[2] In ruling on the propriety of a trial court's decision on a motion to suppress, the appellate court considers the evidence introduced at the suppression hearing and at trial. See, e.g., Beasley v. Commonwealth, 60 Va. App. 381, 385 n.1, 728 S.E.2d 499, 501 n.1 (2012). The Court views the evidence in the light most favorable to the party who prevailed below, in this case the Commonwealth. E.g., Raab v. Commonwealth, 50 Va. App. 577, 579, 652 S.E.2d 144, 146 (2007) (*en banc*).

[3] It was daylight and Vaughters was travelling in the opposite direction when he first saw the vehicle.

that the Virginia Department of Motor Vehicles had listed the appellant as a felony habitual offender.

Before the appellant's trial for driving after being determined to be a habitual offender, he made a motion to suppress the evidence obtained during the traffic stop. He argued that the stop was not supported by a reasonable suspicion of unlawful activity. The trial court denied the motion. In doing so, the court found that an inspection sticker is not "normally" taped to a windshield. The court concluded that the tape adhering the sticker to the windshield "justif[ied] a reasonable suspicion to stop, to make sure it's properly inspected."

A jury found the appellant guilty of driving after being adjudicated a habitual offender. He was sentenced to five years of imprisonment, with one year suspended.

## II. ANALYSIS

The appellant argues that the trial court erred in denying his motion to suppress the evidence because Trooper Vaughters did not have a reasonable suspicion that he was engaged in criminal activity or had committed a traffic infraction at the time that he was stopped.

On appeal of the denial of a motion to suppress evidence, the appellant has the burden to show that the trial court's ruling constituted reversible error. Mason v. Commonwealth, 291 Va. 362, 367, 786 S.E.2d 148, 151 (2016). The ultimate determinations of whether reasonable suspicion exists and "whether a person has been seized in violation of the Fourth Amendment" involve "questions of both law and fact and are reviewed *de novo* on appeal." Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000). The appellate court must "independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 515 (2008). In doing so, however, the Court is "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence." Jones v.

- 3 -

Commonwealth, 279 Va. 665, 670, 691 S.E.2d 801, 803 (2010) (quoting Whitehead v. Commonwealth, 278 Va. 300, 306, 683 S.E.2d 299, 301 (2009)).  In addition, we "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Reittinger, 260 Va. at 236, 532 S.E.2d at 27 (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).

The Fourth Amendment protects people from unreasonable searches and seizures.  E.g., Sidney v. Commonwealth, 280 Va. 517, 522, 702 S.E.2d 124, 127 (2010).  This "protection extends to brief investigatory stops 'that fall short of traditional arrest.'"  Moore v. Commonwealth, 276 Va. 747, 757, 668 S.E.2d 150, 155 (2008) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).  The Fourth Amendment requirements are met, however, "if the officer's action in making an investigatory stop is supported by 'reasonable suspicion to believe that criminal activity "may be afoot."'"  Id. (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).  "[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped . . . briefly while attempting to obtain additional information."  Sidney, 280 Va. at 524, 702 S.E.2d at 128-29 (quoting Hayes v. Florida, 470 U.S. 811, 816 (1985)).  The purpose of an investigatory stop, including the stop of a vehicle, is "to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion."  Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001).

"There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists . . . ."  Hoye v. Commonwealth, 18 Va. App. 132, 134-35, 442 S.E.2d 404, 406 (1994).  A "reasonable suspicion is more than an unparticularized suspicion or 'hunch.'"  Sidney, 280 Va. at 523, 702 S.E.2d at 128 (quoting Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000)).  However, "[t]he likelihood of criminality 'need not rise to the level required for

probable cause and it falls considerably short of satisfying a preponderance of the evidence standard' applicable in other contexts." Raab v. Commonwealth, 50 Va. App. 577, 581, 652 S.E.2d 144, 146 (2007) (*en banc*) (quoting Arvizu, 534 U.S. at 274).

The law is well settled regarding the analysis. On appellate review, we must consider "the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Mason, 291 Va. at 368, 786 S.E.2d at 151 (quoting Arvizu, 534 U.S. at 273). In conducting this analysis, we are mindful that an officer is permitted to view the circumstances confronting him "in light of his training and experience." Jones, 279 Va. at 673, 691 S.E.2d at 805. "[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer." Lovelace v. Commonwealth, 37 Va. App. 120, 124-25, 554 S.E.2d 688, 690 (2001) (alterations in original) (quoting Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995)). "The test is . . . whether the facts and circumstances apparent to [the officer] at the time of the stop were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law was occurring or was about to occur." Mason, 291 Va. at 368, 786 S.E.2d at 151; see also Ornelas, 517 U.S. at 696. Further, "[t]he possibility of an innocent explanation for the suspicious conduct does not necessarily forbid an officer from making a brief, investigatory stop" to confirm or dispel his suspicion. Raab, 50 Va. App. at 581, 652 S.E.2d at 146.

The Commonwealth maintains that the trial court correctly found that Vaughters had reasonable articulable suspicion to believe that the appellant was violating Code §§ 46.2-1172 and -1173. Code § 46.2-1172 proscribes using a vehicle safety inspection sticker "otherwise than as authorized by the Superintendent" of State Police. Code § 46.2-1173 provides that "[n]o person shall make, issue, or knowingly use any imitation or counterfeit of an official safety

inspection sticker" and "[n]o person shall display or cause or permit to be displayed upon any vehicle any safety inspection sticker knowing it to be fictitious or issued for another vehicle."

In Mason, 291 Va. at 369, 786 S.E.2d at 152, the Supreme Court of Virginia considered whether an officer lawfully stopped a vehicle based on an object dangling from the rearview mirror. The Court held that the traffic stop did not violate the Fourth Amendment because "[a] reasonable person could readily conclude" that the parking pass "might have violated the statute" prohibiting objects hanging from the rearview mirror "'in such a manner as to obstruct the driver's clear view of the highway through the windshield.'" Id. at 365, 371, 786 S.E.2d at 150, 153 (quoting Code § 46.2-1054).

Similarly, here, a reasonable person viewing the circumstances could conclude that the inspection sticker may have been placed illegally on the car. See, e.g., Shifflett v. Commonwealth, 58 Va. App. 732, 735, 716 S.E.2d 132, 134 (2011) (stating that an investigatory stop requires a reasonable suspicion only that unlawful activity may be afoot). The facts in the record are critical to this legal conclusion. See, e.g., Harmon v. Commonwealth, 15 Va. App. 440, 445, 425 S.E.2d 77, 79 (1992).

Vaughters explained that the inspection sticker on the car driven by the appellant looked like it had been transferred. It was "excessively" taped to the windshield with tape on each of its four corners. He noted that the sticker looked "dirty" and specifically explained that the adhesive side of the sticker gets dirty when it is removed from one windshield and placed on another. Trooper Vaughters believed, based on his experience, that the inspection sticker had been issued for a different vehicle and placed on the car driven by the appellant. Vaughters had five years of experience, with a focus on traffic enforcement, and had made "thousands" of traffic stops. See Moore, 276 Va. at 757, 668 S.E.2d at 156 ("[A]n officer's specialized training and personal experience, unavailable to a person untrained in law enforcement, are entitled to

some weight."). The trooper had experience specifically with counterfeit and transferred inspection stickers, and he had executed "fifty or sixty" traffic stops based on suspicious inspection stickers. Further, Vaughters testified that he could not verify the validity of the inspection sticker without stopping the vehicle. Accordingly, Trooper Vaughters articulated sufficient facts to support a particularized and reasonable suspicion justifying the traffic stop. Consistent with the constitutional requirement, the stop allowed Vaughters to work to "quickly confirm or dispel" his reasonable suspicion that the appellant had violated Code § 46.2-1172 or § 46.2-1173. See Davis, 35 Va. App. at 539, 546 S.E.2d at 255. This is the precise reason for an investigatory stop. See id. Consequently, the trial court did not err in holding that the stop of the car did not violate the appellant's Fourth Amendment rights.

The appellant correctly notes that there are possible innocent explanations for having an inspection sticker taped to a car windshield. See, e.g., Code § 46.2-1163 (not specifying how a vehicle inspection sticker must be "placed on the windshield"); Code § 46.2-1164 (allowing the transfer of an inspection sticker from a broken windshield to a replacement one). However, the fact that the inspection sticker could have been lawful does not compel a different outcome in this case. See, e.g., Reel v. Commonwealth, 31 Va. App. 262, 270, 522 S.E.2d 881, 885 (2000) ("The fact that a vehicle displaying a rejection sticker may be operated legally . . . does not mean a rejection sticker fails to provide reasonable suspicion that the driver is committing a traffic infraction."). The very reason for the stop was for Trooper Vaughters to quickly determine whether the inspection sticker belonged on the car or was being used in violation of the law.

The appellant's reliance on this Court's panel decision in <u>Moore v. Commonwealth</u>, 49 Va. App. 294, 640 S.E.2d 531 (2007), which was affirmed by the Supreme Court, is misplaced.[4] In <u>Moore v. Commonwealth</u>, 276 Va. 747, 668 S.E.2d 150 (2008), a police officer saw a peeling inspection sticker on the windshield of a vehicle. <u>Id.</u> at 751, 668 S.E.2d at 152. The officer's experience with transferred inspection stickers caused him to suspect that the peeling sticker had not been issued for that car. <u>Id.</u> The Supreme Court held that the officer's suspicion of criminal activity "was undermined by his knowledge, prior to making the stop, that [the defendant] was driving a rental car." <u>Id.</u> at 757, 668 S.E.2d at 156. The Court reasoned that "[g]uilty knowledge . . . is an essential element of the offense of displaying a fictitious inspection sticker or one issued for another vehicle" and that a rental car driver is unlikely to verify the inspection status of the car that he or she rents. <u>Id.</u> at 757-58, 668 S.E.2d at 156. Here, unlike the officer in <u>Moore</u>, who knew he was dealing with a rental car, Vaughters did not possess any knowledge at the time of the stop that undermined his suspicion that the appellant had tampered with the inspection sticker.[5]

The appellant has not met his burden of showing that the trial court committed reversible error. On appeal, we are bound by the trial court's factual determinations, we must give due

---

[4] The panel decision was vacated when this Court granted *en banc* review of the case. <u>Moore v. Commonwealth</u>, 49 Va. App. 497, 642 S.E.2d 769 (2007) (*en banc*). Subsequently, the Supreme Court held that the panel "reached the correct *result*." 276 Va. at 757, 668 S.E.2d at 156 (emphasis added). The Court "reinstate[d] the majority panel decision" but did not adopt its reasoning. <u>Compare id.</u> at 758, 668 S.E.2d at 156, <u>with</u> <u>Wagoner v. Commonwealth</u>, 289 Va. 476, 484, 770 S.E.2d 479, 484 (2015) ("adopt[ing]" this Court's holding on a particular issue), <u>and</u> <u>Allied Fibers & Plastics v. Cibula</u>, 245 Va. 337, 338, 428 S.E.2d 905, 906 (1993) (*per curiam*) (explicitly "adopt[ing]" this Court's opinion as its own). Consequently, the <u>Moore</u> panel decision is not binding precedent, and the Supreme Court reasoning controls.

[5] The appellant also relies on unpublished opinions as persuasive authority in support of his argument. <u>See, e.g.</u>, <u>Coffman v. Commonwealth</u>, 67 Va. App. 163, 172 n.7, 795 S.E.2d 178, 182 n.7 (2017) (explaining that unpublished Court of Appeals opinions may be cited as persuasive authority but are not binding precedent). We have reviewed these cases and, in light of the published authority, are not persuaded by the appellant's position.

weight to Trooper Vaughters' experience, and we are required to view the evidence in the light most favorable to the Commonwealth. We conclude that "the facts and circumstances apparent" to Vaughters, in light of his experience in traffic enforcement, "were such as to create in the mind of a reasonable officer in the same position" a reasonable suspicion that the appellant was displaying an inspection sticker issued for another vehicle. See Mason, 291 Va. at 368, 786 S.E.2d at 151.

Based on the record, the totality of the circumstances supports the trial court's conclusion that Vaughters had a reasonable suspicion that the inspection sticker had been illegally moved from another vehicle to the one driven by the appellant. That suspicion permitted the officer to stop the appellant in order to investigate the matter and quickly confirm or dispel his suspicion. For these reasons, the traffic stop did not violate the appellant's Fourth Amendment rights.

### III. CONCLUSION

We hold that the totality of the circumstances supports the conclusion that Trooper Vaughters had a reasonable, articulable suspicion of illegal activity. Consequently, we hold that the trial court correctly denied the appellant's motion to suppress. For these reasons, we affirm the conviction for driving after being determined a habitual offender. We remand the case solely for correction of a clerical error in the June 8, 2016 sentencing order, which incorrectly states that the appellant pled guilty, rather than that he was tried by a jury. Code § 8.01-428(B); see, e.g., Howell v. Commonwealth, 274 Va. 737, 739 n.*, 742, 652 S.E.2d 107, 108 n.*, 109 (2007).

Affirmed and remanded.