Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Goodwyn, JJ., and Russell, S.J.

MATTHEW TREMAINE MOORE                    OPINION BY
                                  SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 080199                   October 31, 2008

COMMONWEALTH OF VIRGINIA

                FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal we consider whether a police officer's

traffic stop invaded the Fourth Amendment rights of a

motorist.  We also consider questions concerning the

application of Rules 5A:12(c) and 5A:34.

                        FACTS AND PROCEEDINGS

     Because the case was appealed after conditional pleas of

guilty, there is no dispute as to the essential facts.  On the

afternoon of February 15, 2005, Officer W. T. Bryan of the

Henrico County police was sitting in his police cruiser parked

in a parking lot behind a grocery store, facing an adjacent

street.  He saw a car traveling southbound on the street.  The

car displayed an inspection sticker that was "peeling off of

the windshield."  The car passed about five feet away from the

front of his cruiser and, although the sticker was "sort of

bowed," the sticker was legible to the officer and he could

see that it was valid.  The officer drove out of the parking

lot and followed the car while checking the car's license

number on his computer. This check revealed that the car was owned by a rental company in Midlothian, Virginia.

Later, at a hearing on a motion to suppress the evidence, the officer testified that he had stopped numerous vehicles with peeling inspection stickers and found that "a great majority of the time . . . the inspection sticker, that will be peeling off the window, does not belong on that vehicle." Asked to be more specific, the officer testified that he had stopped approximately 50 vehicles within the previous six months displaying peeling inspection stickers and that 30 to 35 of the 50 stickers did not belong to the vehicles on which they were displayed.

After verifying the ownership of the car, Officer Bryan stopped it because of his suspicion concerning the sticker. He was unaware of any other traffic infractions on the part of the driver. As the officer approached the car, he detected an odor of marijuana coming from it. The driver, Matthew Tremaine Moore, admitted that he had been smoking marijuana in the car. The officer asked Moore and his passenger to leave the car and then searched it, finding marijuana, cocaine, heroin, digital scales and a semi-automatic pistol inside.

In the Circuit Court of Henrico County, Moore was indicted for possession of cocaine with intent to distribute and for possession of a firearm after being convicted of a

felony. He made a motion to suppress the evidence seized from the car on the ground that the peeling inspection sticker did not give Officer Bryan "probable cause or a reasonable suspicion of criminal activity" to stop the vehicle and that the stop and seizure therefore violated Moore's rights under the Fourth Amendment. After the circuit court denied the motion to suppress, Moore, with the consent of the court and agreement of the Commonwealth, entered conditional pleas of guilty to both indictments, reserving his right, pursuant to Code § 19.2-254, to appeal the circuit court's ruling on the motion to suppress.

Moore appealed the case to the Court of Appeals of Virginia. His petition for appeal contained a single question presented: "Did Officer Bryan have probable cause to make a traffic stop of the vehicle being driven by Moore on the sole basis that he observed that a valid inspection sticker was not totally affixed to the windshield of the vehicle?" The Commonwealth filed a brief in opposition that made no mention of the wording of Moore's question presented, but simply rephrased the question as follows: "Whether Officer Bryan had reasonable articulable suspicion to stop the defendant's car." Thereafter, the case was briefed, argued and decided in the Court of Appeals solely on the basis of the "reasonable articulable suspicion" standard proposed by the Commonwealth.

3

By majority decision of a three-judge panel entered on February 13, 2007, the Court of Appeals rejected the circuit court's decision on the motion to suppress, holding that, on the facts in the record, Officer Bryan had nothing more than "an inchoate and unparticularized 'hunch' that the inspection sticker did not belong to appellant's vehicle. Such a 'hunch' is too slender a reed to justify an investigatory stop under the Fourth Amendment." Moore v. Commonwealth, 49 Va. App. 294, 307, 640 S.E.2d 531, 537 (2007) (citation omitted). The panel's order remanded the case to the circuit court. Id. at 308, 640 S.E.2d at 538.

The Commonwealth filed a petition for rehearing en banc, in which it stated the sole question presented as: "Did the panel majority err in finding there was no reasonable suspicion to justify the stop?" The Court of Appeals granted the Commonwealth's petition. Moore v. Commonwealth, 49 Va. App. 497, 642 S.E.2d 769 (2007).

A majority of the Court of Appeals, sitting en banc, declined to address the Fourth Amendment question upon which the case had been argued, ruling instead, sua sponte, that Moore was seeking reversal of the trial court on an issue outside the question presented in his petition for appeal, in

4

violation of Rule 5A:12(c).[1]  For that reason, the Court of Appeals affirmed the convictions without reaching the merits. Moore v. Commonwealth, 51 Va. App. 1, 3-4, 654 S.E.2d 305, 306 (2007).

Neither the Court of Appeals nor either of the parties made any mention of the variance between the parties' respective versions of the question presented until publication of the court's en banc decision.  We awarded Moore an appeal.  He assigns error to the Court of Appeals' en banc decision, asserting that the court erred in ruling that he had failed to satisfy the requirements of Rule 5A:12(c) and that the court, by deciding the case on an issue that was never pleaded, briefed or argued before the court, without notice to the parties, had deprived him of his right to due process of law.  The Commonwealth assigns cross-error to the Court of Appeals' failure to "[rule] in the alternative that the stop was supported by reasonable suspicion."

### Analysis

The Court of Appeals' application and interpretation of the Rules of Court, like the interpretation of a statute, presents a question of law that we review de novo.  Jay v. Commonwealth, 275 Va. 510, 517, 659 S.E.2d 311, 315 (2008).

---

[1] Rule 5A:12(c) provides, in pertinent part:  "Only questions presented in the petition for appeal will be noticed

5

The time limits for filing a notice of appeal and for filing a petition for appeal under Rule 5A:3(a) are jurisdictional, but the requirements of Rule 5A:12(c), like the contents of several other rules, have been expressly held to be not jurisdictional. Id. at 517-20, 659 S.E.2d at 315-17.

Any court may take notice of the violation of a jurisdictional rule or statute sua sponte at any stage of the proceedings. See Lucas v. Biller, 204 Va. 309, 312-13, 130 S.E.2d 582, 585 (1963); Rule 3A:9(b). On the other hand, invocation of a non-jurisdictional rule to dismiss an appeal, or to prevent consideration of its merits, should not be undertaken without considering whether a party's failure to adhere strictly to the rule's requirements is insignificant, or so substantial as to preclude the court's addressing the merits of the case. Jay, 275 Va. at 520, 659 S.E.2d at 317.

As we pointed out in Jay, our holding in that case does not leave the Court of Appeals without appropriate remedies. It "may, among other things, require an appellant to re-submit the petition for appeal or opening brief, or it may treat a question presented as waived." Id. A concurring opinion in the Court of Appeals' en banc decision in the present case suggested an additional remedy: "This case presents the rare occasion in which I believe that we should exercise our

by the Court of Appeals."

6

inherent authority to expand the question presented and decide the issue argued – whether the stop of the defendant's car was in violation of the Fourth Amendment to the United States Constitution." Moore v. Commonwealth, 51 Va. App. 1, 6, 654 S.E.2d 305, 307 (2007) (Petty, J., concurring in the result).

Moore, on appeal, agrees that the question presented in his petition for appeal to the Court of Appeals erroneously relied on the wrong standard governing his Fourth Amendment claim because it invoked the "probable cause" standard rather than the applicable "reasonable suspicion" standard. He argues, however, that "reasonable suspicion" is subsumed within "probable cause" and the question presented, if inartfully expressed, was nevertheless sufficient to apprise the Commonwealth and the Court of Appeals that he was asserting a violation of his Fourth Amendment protection against unreasonable search and seizure. Because "probable cause" requires a more stringent standard, putting the prosecution to a higher level of proof, we do not agree that the "reasonable suspicion" standard inherently presents the same issues. We do agree, however, that Moore's question presented left no doubt that a Fourth Amendment violation was the subject of his appellate claim.

In that light, we consider the criteria we articulated in Jay: Was Moore's failure to adhere strictly to the

7

requirements of Rule 5A:12(c) insignificant, or was it so
substantial as to preclude the Court of Appeals from
addressing the merits of the case?  In applying those
criteria, we take into consideration the factors itemized in
Judge Petty's concurring opinion:

> While it is clear that appellant employed the
> irrelevant probable cause standard in his question
> presented, it is also clear that all parties
> involved in this case addressed the relevant
> standard of reasonable suspicion in arguing and
> deciding the case.  The defense attorney as well as
> the Commonwealth's attorney identified the
> appropriate standard in their arguments to the trial
> court.  The trial court obviously understood those
> arguments, commenting that "it basically boils down
> to whether or not the officer had a reasonable
> articulable suspicion. . . ."  In his opening brief,
> appellant argued that the officer had neither
> probable cause nor reasonable suspicion to justify
> the stop.  The Attorney General understood the
> issue, rephrased the question presented to state the
> correct constitutional standard, and went on to
> address it.  In a published decision, a panel of
> this Court decided the case on the merits.  Finally,
> we never asked appellant to address the issue at
> oral argument.  Simply put, at no time prior to our
> decision did the form of the question presented
> raise any concern.

Moore, 51 Va. App. at 6, 654 S.E.2d at 507 (Petty, J.,
concurring in the result).[2]

Code § 17.1-402(D) provides that the Court of
Appeals sitting en banc "shall consider and decide the

---

[2] The dissenting opinion in the panel's decision did not
mention any violation of the rules, but instead disagreed with
the majority's conclusion that the traffic stop was made

case and may overrule any previous decision by any panel or of the full court." (Emphasis added). This language indicates a clear legislative preference for the prompt and final disposition of appellate cases on the merits, when that can be done without interfering with the orderly administration of justice.[3]

Rule 5A:34 provides for "Rehearing En Banc." Neither Code § 17.1-402(D) nor Rule 5A:34 expressly provides for the status of an existing panel decision when a rehearing en banc has been granted, but the Court of Appeals has recently ruled that "[t]he grant of *en banc* review vacates the prior panel opinion in toto." Glenn v. Commonwealth, 49 Va. App. 413, 423 n.3, 642 S.E.2d 282, 287 n.3 (2007) (en banc). In the present case, the Court of Appeals expressly restated that holding: "Our *en banc* order had the effect of vacating the panel opinion." Moore, 51 Va. App. at 2 n.1, 654 S.E.2d at 307 n.1.

---

without reasonable suspicion. Moore, 49 Va. App. at 308-11, 640 S.E.2d at 538-39 (McClanahan, J., dissenting).

[3] A related and parallel purpose underlies the ancient statute of jeofails, which survives in modern form as Code § 8.01-678. ("When it plainly appears . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed [f]or any other defect, imperfection, or omission in the record . . . .")

Nevertheless, in a decision four months after the decision in the present case, the Court of Appeals, en banc, unanimously[4] imposed a limitation on the issues to be considered at a rehearing en banc: "We are limited to the issues presented in the Commonwealth's petition [for a rehearing en banc]. Thus, the only issues currently before us are the ones raised in the petition for rehearing *en banc*." Ferguson v. Commonwealth, 51 Va. App 427, 433, 658 S.E.2d 692, 695 (2008). As noted above, the Commonwealth's petition for a rehearing in the present case was succinct: "Did the panel majority err in finding there was no reasonable suspicion to justify the stop?" No issue was raised concerning a rule violation.[5]

The Attorney General's election to rephrase the question presented in Moore's petition for appeal, with Moore's tacit acquiescence, relinquished any reliance the Commonwealth might have made on Moore's violation of Rule 5A:12(c). The Commonwealth again adhered to that election in its petition for rehearing en banc. The effect of that election was to present the legally

---

[4] Four judges dissented on other grounds.
[5] Because the Court of Appeals' ruling in Ferguson, quoted above, is not before us in the present case, we express no opinion as to its correctness.

correct, and constitutionally dispositive, question to the Court of Appeals by agreement of the parties. That question was thereafter fully briefed, argued and decided on appeal. In those circumstances, it can hardly be said that Moore's violation of that non-jurisdictional rule was so substantial as to preclude the Court of Appeals from addressing the merits of the case. We conclude that, in the unusual circumstances of this case, the Court of Appeals erred in foreclosing Moore's right to defend the decision of the panel that had ruled in his favor, and will accordingly reverse the judgment of the Court of Appeals sitting en banc.[6]

We turn to the issue of reasonable suspicion, presented on appeal by the Commonwealth's assignment of cross-error. Because Moore's conditional pleas of guilty resolved all factual issues in the Commonwealth's favor, the only question presented to us on appeal is whether those facts implicate the Fourth Amendment, and if so, whether Officer Bryan unlawfully infringed upon an area protected by the Fourth Amendment. Because that is a question of law, we consider it de novo. Alston v.

---

[6] In fairness to the Court of Appeals, it must be borne in mind that its en banc decision in the present case was handed down before our decision in Jay.

11

Commonwealth, 274 Va. 759, 764, 652 S.E.2d 456, 459 (2007). The majority panel opinion in the Court of Appeals applied the same standard of review. Moore, 49 Va. App. at 297, 640 S.E.2d at 533 (quoting Hughes v. Commonwealth, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2002)).

The Fourth Amendment to the Constitution of the United States prohibits "unreasonable searches and seizures," and that protection extends to brief investigatory stops "that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002). The requirements of the Fourth Amendment are satisfied, however, if the officer's action in making an investigatory stop is supported by "reasonable suspicion to believe that criminal activity 'may be afoot.' " Id. (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

Here, as both parties and the Court of Appeals agree, the dispositive question is whether the officer's traffic stop was founded on a reasonable suspicion that criminal activity was afoot, a standard less stringent than probable cause. Nevertheless, reasonable suspicion, like probable cause, "is dependent upon both the content of information possessed by police and its degree of

12

reliability." Alabama v. White, 496 U.S. 325, 330 (1990).

In weighing those factors, courts must consider the totality of the circumstances. Arvizu, 534 U.S. at 273. Among those circumstances, an officer's specialized training and personal experience, unavailable to a person untrained in law enforcement, are entitled to some weight. See United States v. Cortez, 449 U.S. 411, 418-19 (1981). If, however, after considering those factors, the court concludes that the officer's concern was "more an inchoate and unparticularized suspicion or 'hunch,' than a fair inference in the light of [the officer's] experience, [it] is simply too slender a reed to support [a search or seizure]." Reid v. Georgia, 448 U.S. 438, 441 (1980) (internal quotation marks and citation omitted).

Applying those principles, we conclude that the majority panel opinion in the Court of Appeals reached the correct result. Although inspection stickers may undoubtedly become partially separated from a windshield by a wide array of mishaps entirely unrelated to violations of the law, the officer's experience leading him to suspect otherwise was entitled to some weight. His conclusion, however, was undermined by his knowledge,

13

prior to making the stop, that Moore was driving a rental car.

Violations of Article 21 of Chapter 10, Subtitle III of the Motor Vehicle Code (Code §§ 46.2-1157 to 1175.1, "Safety Inspections") are made Class 3 misdemeanors, for a first offense, by Code § 46.2-1171. Guilty knowledge, however, is an essential element of the offense of displaying a fictitious inspection sticker or one issued for another vehicle.[7] Those who operate their own cars may sometimes have a motive to evade the motor vehicle inspection laws, but one who lawfully rents a car from a rental company would have little or no reason to verify the inspection status of the rental car, to be aware of any offense that may have been committed by the rental company, or to participate in concealing such an offense. Accordingly, the officer's experience with peeling inspection stickers was entitled to little weight in the circumstances of this case. We agree with the majority panel decision in the Court of Appeals that, in this instance, the officer's observation of a peeling inspection sticker, without more, gave rise to nothing

---

[7] Code § 46.2-1173 provides, in pertinent part: "No person shall display or cause or permit to be displayed upon any vehicle any safety inspection sticker knowing it to be fictitious or issued for another vehicle." (Emphasis added.)

14

more than a "hunch" that Moore was violating the motor vehicle inspection laws, and, therefore, was "too slender a reed" to justify an exception to the protections afforded by the Fourth Amendment.

### Conclusion

For the reasons stated, we will reverse the judgment of the Court of Appeals en banc, reinstate the majority panel decision and remand the case to the Court of Appeals with direction to remand it to the circuit court for further proceedings if the Commonwealth should be so advised.

<u>Reversed and remanded</u>.

JUSTICE LEMONS, with whom JUSTICE KINSER joins, dissenting.

In my judgment, the Court of Appeals simply followed our example and our direction when it affirmed the trial court in this case.  I respectfully dissent.

Rule 5A:12(c) states in pertinent part that

> [t]he petition for appeal shall contain the questions presented.  The form and contents of the petition for appeal shall conform in all respects to the requirements of the opening brief of appellant (Rule 5A:20). . . .  Only questions presented in the petition for appeal will be noticed by the Court of Appeals.

In <u>Jay v. Commonwealth</u>, 275 Va. 510, 659 S.E.2d 311 (2008), we held that the Court of Appeals erred when it

15

dismissed portions of the petitions for appeal at issue in the case.  Holding that the requirements of Rule 5A:20 are not jurisdictional, we noted the difference between dismissing a case for jurisdictional reasons and denying an appeal for failure to comply with the rule.  We stated that the Court of Appeals "should . . . consider whether any failure to strictly adhere to the requirements of Rule 5A:20(e) is insignificant, thus allowing the court to address the merits of a question presented."  Jay, 275 Va. at 520, 659 S.E.2d at 317.  We gave an example of what would be insignificant when we suggested that an overly rigid application of the Rules might mean that "if an appellant did not list cases alphabetically in the table of citations as required by Rule 5A:20(a), dismissal of the appeal would be mandated as a jurisdictional matter."  Id.

The sort of technical defect proffered as an example in Jay is dramatically different from Appellant's mistake here: misstating the legal standard upon which his entire appeal was based.  Additionally, the fact that neither the Commonwealth nor the panel of the Court of Appeals recognized the Appellant's noncompliance with the Rules does not preclude the Court of Appeals sitting en banc from rendering a correct judgment.  In this case, the Court of Appeals not only has done what this Court routinely does, it also has followed our direction to do likewise.  In Jay, we noted our analogous Rule

16

5:17(c) and stated, "[w]hen an appellant fails to comply with Rule 5:17(c)(4), this Court generally treats the argument as waived." Jay, 275 Va. at 519, 659 S.E.2d at 316 (emphasis added). We cited seven cases in support of our practice:

> Atkins v. Commonwealth, 272 Va. 144, 149, 631 S.E.2d 93, 95 (2006) (failure to brief an assignment of error constitutes a waiver of the issue); Muhammad v. Commonwealth, 269 Va. 451, 477, 619 S.E.2d 16, 30 (2005) (same); Elliott v. Commonwealth, 267 Va. 396, 422, 593 S.E.2d 270, 286 (2004) (same); Burns v. Commonwealth, 261 Va. 307, 318, 541 S.E.2d 872, 880 (2001) (same); Kasi v. Commonwealth, 256 Va. 407, 413, 508 S.E.2d 57, 60 (1998) (same); Jenkins v. Commonwealth, 244 Va. 445, 451, 423 S.E.2d 360, 364 (1992) (same); Quesinberry v. Commonwealth, 241 Va. 364, 370, 402 S.E.2d 218, 222 (1991) (same).

Id. at 519-20, 659 S.E.2d at 316-17.

We have also required the Court of Appeals to apply Rule 5A:12(c), the rule at issue here, in the same way. For example, in Clifford v. Commonwealth, 274 Va. 23, 645 S.E.2d 297 (2007), we reversed the Court of Appeals, on the ground that the basis upon which its decision rested was not properly before the Court because it was not contained in the appellant's petition for appeal. Id. at 25, 645 S.E.2d at 297. We cited the Court of Appeals' own interpretation of Rule 5A:12(c), in McLean v. Commonwealth, 30 Va. App. 322, 329, 516 S.E.2d 717, 720 (1999) (en banc) (holding that "[o]nly those arguments presented in the petition for appeal

17

and granted by this Court will be considered on appeal").
Clifford, 274 Va. at 25, 645 S.E.2d at 297.  Other Court of
Appeals opinions affirm this interpretation of the rule.  See,
e.g., Lay v. Commonwealth, 50 Va. App. 330, 336 n.3, 649
S.E.2d 714, 716 n.3 (2007); Selph v. Commonwealth, 48 Va. App.
426, 434, 632 S.E.2d 24, 28 (2006), vacated on other grounds,
51 Va. App. 238, 656 S.E.2d 425 (2008).  We should not reverse
the Court of Appeals for failure to properly interpret the
rule as we did in Clifford, and then here reverse it again
when it has done so.

We have not had the opportunity since Jay was decided in
April of this year to reaffirm this approach to interpreting
the rule, but the Court of Appeals has followed it in several
unpublished opinions during that time.  See Rahnema v.
Rahnema, Record No. 2701-07-1, slip op. at 4 (June 10, 2008);
Greene v. Greene, Record No. 3031-07-4, slip op. at 4-5 (June
3, 2008); Jones v. Charlottesville Dep't of Soc. Servs.,
Record No. 1710-07-2, slip op. at 2 (May 27, 2008).  And in
Parks v. Parks, Record No. 1991-07-1 (September 23, 2008),
decided just last month, a three-judge panel of the Court of
Appeals found that an appellant's failure to provide legal
authority in support of her arguments violated Rule 5A:20(e).
Because this violation was significant, the Court of Appeals
treated the appellant's questions presented as waived and

18

affirmed without opinion the judgment of the trial court. Id., slip op. at 2. As the Court of Appeals rightly observed, this outcome was dictated by and fully consistent with our opinion in Jay. Id., slip op. at 1-2.

The issue of noncompliance in this case goes directly to the heart of appellate review: stating the issue to be considered and the legal principle that governs. Here, Moore asked the Court of Appeals to reverse the trial court because the evidence was insufficient to support a finding of probable cause to stop him. The Court of Appeals could answer that question and still not resolve the case before it because the correct legal standard for a Terry stop is whether police had a reasonable articulable suspicion that criminal activity was afoot.

The majority holds that the Attorney General "[elected] to rephrase the question presented in Moore's petition for appeal, with Moore's tacit acquiescence." In my opinion, this holding avoids the issue. The issue is not what the parties may have done; rather, it is the power of the Court of Appeals to do what it has done in its en banc judgment. To restate what should be obvious, Rule 5A:12(c) states: "Only questions presented in the petition for appeal will be noticed by the Court of Appeals." The en banc majority of the Court of Appeals simply enforced the plain language of this Rule.

19

Our system of appellate review requires the litigants to place before the reviewing court the issues that are the subject of the appeal.  It is not proper for an appellate court to intervene on behalf of a particular party and reframe an issue to help their cause; such action violates a basic premise that American courts act as neutral arbiters.  In this case, the Court of Appeals en banc rendered its judgment in a fashion identical to the manner in which we handle the analogous rule and decided the issue exactly as we have specifically directed them in a recent case.  In doing so, the Court of Appeals en banc embraced a neutral application of the Rules.  In short, the Court of Appeals en banc did not err.