COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Senior Judge Willis


DALE TRACY MECIMORE
                                                   MEMORANDUM OPINION[*]
v.        Record No. 1398-08-4                          PER CURIAM
                                                   FEBRUARY 3, 2009
ALEXANDRIA DEPARTMENT OF
  HUMAN SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                            Lisa B. Kemler, Judge

           (Stephen Saunders, on brief), for appellant.

           (Jonathan Westreich, Special Counsel to the Alexandria Department
           of Human Services; Ignacio Pessoa; Jill A. Schaub; George P. Doss,
           Jr., Guardian *ad litem* for the minor children; Office of the City
           Attorney, on brief), for appellee.


        Dale Tracy Mecimore (mother) appeals the trial court's order terminating her parental

rights to her four youngest children and approving a permanent foster care plan for her two

oldest children.  Mother contends the trial court erred by (1) finding the evidence sufficient to

terminate her parental rights to her four youngest children; (2) finding that mother had been

unwilling or unable to remedy substantially the conditions which led to the children's foster care

placement; (3) not recognizing mother's employment and personal injury award; (4) not

recognizing that mother's back surgery corrected several of her issues which led to the children

being placed in foster care; (5) admitting evidence of alleged sexual abuse, which occurred after

the children's removal; (6) finding that the Alexandria Department of Human Services (the

Department) made reasonable and appropriate efforts to remedy substantially the conditions

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

which led to the children's foster care placement; (7) finding that the children's alleged abuse or neglect presented a serious and substantial threat to their lives, health or development; (8) finding the evidence sufficient to place her two oldest children in permanent foster care; (9) not recognizing that mother made progress toward reunification with the children; and (10) denying mother legal and physical custody of the children. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

## BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence showed that in 2004, mother was involved in an accident that led to her having severe back pain and limited her ability to walk, bend, and lift. She stopped taking care of her house in Fairfax, and in October 2005, the house was condemned. Fairfax authorities charged mother with felony counts of abuse and neglect. Child protective services became involved in mother's case, and the children went to live with their maternal grandmother.

After approximately one month, mother and the children moved back to their Fairfax home until they were forced to leave, through no fault of their own, in May 2006. At that time, mother and the children moved to Alexandria. In June 2006, Alexandria authorities condemned that house. Initially, the Department arranged for mother and the children to stay in a hotel and then a shelter. Alexandria authorities also arrested mother on felony child abuse and neglect

charges. The Department removed the children, and mother signed entrustment agreements with the Department.

On August 1, 2006, mother pled guilty to six reduced charges of misdemeanor abuse and neglect in Fairfax, and on October 20, 2006, mother pled guilty to two felony charges of abuse and neglect in Alexandria. Mother was incarcerated for approximately 120 days.

In August 2006 and at times subsequent to her incarceration, mother met with psychologists for evaluations. One psychologist concluded that she does not handle conflict well, assigns blame to others, and exercises poor judgment. Another psychologist diagnosed her with adjustment disorder with depressed mood. A third psychologist found that she and her children were attached to one another, but mother would blame others for her problems. All three psychologists concluded that mother would benefit from therapy. However, mother never did seek therapy.

While the children were in foster care, mother would regularly visit them. At first, the visits were supervised outside of the home, but then the Department allowed for supervised visits within the home. The in-house visits were troublesome because mother had difficulty supervising and keeping track of all of the children. The in-house visits stopped when mother became too adversarial with the social workers.

The children have special needs, and mother had a hard time meeting their needs. However, the children have improved since being placed in the Department's custody.

In December 2007, the Department filed petitions to (a) terminate mother's parental rights and sought approval of foster care plans with the goal of adoption for the youngest four children and (b) place the oldest two children in permanent foster care. On January 23, 2008, the Alexandria Juvenile and Domestic Relations District Court terminated mother's parental rights

and approved the foster care plans.  Mother appealed to the circuit court.  On May 16, 2008, the Alexandria Circuit Court entered an order terminating mother's parental rights to the four youngest children and approving the permanent foster care plans for the two oldest children. Mother timely noted her appeal.

## ANALYSIS

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests."  Logan, 13 Va. App. at 128, 409 S.E.2d at 463.  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

## Questions Presented 1 and 8

Mother argues that there was not sufficient evidence to support a termination of parental rights for her youngest four children and permanent foster care for her oldest two children.

At the time of the trial, the children had been in foster care for almost two years.

Mother's parental rights were terminated pursuant to Code § 16.1-283(B)[1] and Code

§ 16.1-283(C)(1)[2] and (C)(2).[3]

The two oldest children were placed in permanent foster care pursuant to Code

§ 16.1-282.1. Permanent foster care "is not a less drastic form" than adoption, "but rather is a

different and distinct alternative." Martin, 3 Va. App. at 22, 348 S.E.2d at 17. Permanent foster

---

[1] Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

[2] Code § 16.1-283(C)(1) states a parent's parental rights may be terminated if:

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

[3] Code § 16.1-283(C)(2) states a parent's parental rights may be terminated if:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

care "is intended to provide a more permanent placement for a child in a particular foster home than is generally obtained in regular foster care." Id.

The children entered foster care because of mother's failure to provide adequate and safe housing. Two of the houses in which they lived were condemned, and mother pled guilty to eight child abuse and neglect charges. Several experts examined mother and concluded that she had limited insight into her behaviors and the role that she played in having her children placed in foster care. When she had an extended visit with all of the children, mother was unable to manage and supervise all of them.

The trial court held that "with more time . . . [mother] might be able to demonstrate that . . . [she has] remedied the conditions which led to the children's foster care placement, [but in] the Court's opinion, . . . [she has] not and cannot within a reasonable time do so."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Mother was unable to meet the Department's requirements for reunification, despite having two years to do so. The trial court did not err in finding that it was in the best interests of the children to terminate mother's parental rights for the youngest four children and to place the oldest two children in permanent foster care.

### Questions Presented 2, 3, and 4

Mother contends that she was willing and able to remedy the conditions that led to foster care placement. Since she is now employed, received a personal injury award, and had back surgery, mother argues that she has improved her situation.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to

substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Mother argues that she remedied some of the initial problems that led to foster care because the results of her accident caused the problems. After the accident, she was physically unable to clean her house, and she explained that this was why the Fairfax house was condemned. However, in August 2006, mother had back surgery and had much better mobility. She also won a $200,000 personal injury award from the accident, so she is in better financial shape to take care of the children.

Although mother did most of the things that were asked of her, she refused to address her mental health issues. As the court noted, mother's "reluctance to obtain the recommended therapy certainly raises a serious concern as to whether she will seriously address the issues that resulted in removal." In addition to mother's refusal to seek therapy, mother was unable to provide adequate supervision for her children who have special needs. When given the opportunity to have an extended visit with the children, she was unable to supervise all of them, especially when she focused on her anger against the social workers. Mother's unwillingness to remedy her situation led to the termination of her parental rights for her youngest four children and permanent foster care for her oldest two children. See Norfolk Division of Soc. Servs. v. Hardy, 42 Va. App. 546, 554, 593 S.E.2d 528, 532 (2004) (evidence supported termination of parental rights because mother did not follow the Department's recommendations, including counseling).

### Question Presented 5

Mother argues that the trial court erred in allowing evidence of alleged sexual abuse, which occurred while the children were in foster care. The social worker testified that one of the children was allegedly sexually involved with one of his younger brothers and that the incident played a role

in the social worker's service planning. The incident occurred in December 2007, when the children were in foster care.

Mother objected to the social worker's statement based on hearsay. Since the alleged incidents occurred after the children's removal from mother's home, mother contends that the incident cannot be used against her at a termination hearing if the Department did not provide her services. Mother also argues that the testimony was more prejudicial than probative.

The Department argues that the alleged incidents were not being offered for the truth of the matter, but for the context of what was going on with the children. The Department contends that the children's current condition is important to explain why the children need supervised attention, and mother has issues with supervision.

Assuming without deciding that the statement was hearsay, we find that the error was harmless. "Under the doctrine of harmless error, we will affirm the circuit court's judgment when we can conclude that the error at issue could not have affected the [result]." King v. Cooley, 274 Va. 374, 379, 650 S.E.2d 523, 526 (2007). Here, the statement did not affect the result. The social worker's testimony did not implicate the mother, and thus, had no significant effect on the termination.

Mother argues that the Department did not make reasonable and appropriate efforts to remedy the situation which led to the children being placed in foster care.[4]

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Mother contends that she had difficulty reaching the initial social worker by telephone because the social worker had family emergencies and would not return mother's calls. However, the social worker's voice mail told callers to contact her supervisor.

The Department offered numerous services to mother. These services included therapy, parenting classes, and supervised visits. Mother, however, refused to participate in therapy. Mother became increasingly angry and argumentative with the social workers. Her anger affected her visits with the children, when she argued with the social workers instead of visiting with the children. The psychologists noted that mother blamed others for her situation and recommended therapy.[5]

---

[4] On appeal, mother argues that the Department did not conduct a home study on the maternal grandmother to try to achieve a goal less drastic than permanent foster care or adoption. This issue was not preserved at the lower level, as mother did not argue that placement with the grandmother should have been investigated. Therefore, we find that the issue is waived. Rule 5A:18.

This issue differs from the issue presented in Moore v. Commonwealth, 276 Va. 747, 668 S.E.2d 150 (2008), since in that case, the parties and the Court knew what the defendant was appealing, although he did not state the question presented correctly.

[5] On appeal, mother argues that testimony from one of the therapists cannot be reliable because he used an inkblot test when testing mother. This issue was not raised as one of mother's questions presented, nor was it preserved at the lower level. Therefore, we find that the issue is waived. Rules 5A:18 and 5A:20.

As noted above, this issue differs from Moore, 276 Va. 747, 668 S.E.2d 150. In Moore, the Commonwealth corrected the defendant's error, and argued the issue using the correct terminology. Id. at 756, 668 S.E.2d at 155. Here, the Department argued that the issue should be barred by Rule 5A:18, since it was not preserved at the lower level. We agree with the Department.

The Department made referrals, but mother claimed that she did not need therapy. Therefore, the Department made reasonable and appropriate efforts, but mother did not accept them.

Mother argues that the court erred in finding that the children's alleged abuse or neglect presented a serious and substantial threat to their life, health or development. One of the factors for terminating parental rights pursuant to Code § 16.1-283(B) is that "the neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development." Code § 16.1-283(B)(1).

Mother contends that her financial and health situation led to the children being placed in foster care. However, mother's financial and health situation were not the primary reasons for the children's placement in foster care. Mother failed to understand and take responsibility for the reasons why the children entered foster care. Mother moved the children from one condemned house to another condemned house in less than twelve months. In reference to the second condemned house, the inspector testified that he had not seen a house in such deplorable condition in the nineteen years that he had been working as a firefighter. The house had numerous health and safety violations, including blocked entry ways, an open electrical panel with standing water, no working smoke detectors, food throughout the house, an inoperable bathroom sink and bathtub, and an infestation of bugs. Mother's failure to recognize how their living situation affected the children's safety and health was one of the reasons for the children being placed in foster care. As a result of the deplorable housing situations, mother pled guilty to and was convicted of several counts of abuse and neglect in Fairfax and Alexandria.

In addition, mother had difficulty maintaining control over all of the children and effectively assessing their needs. The children have special needs, which were not being addressed by mother. However, once in foster care, the children began to improve. One of the children began

- 10 -

much-needed therapy; another child started speech and language therapy; two children started reading on grade level.

Mother's failure to assess and care for the children's needs led to the children being placed in foster care. Her failure to address these concerns led to the termination of her parental rights of her four youngest children and permanent foster care for her two oldest children.

### Question Presented 9

Mother argues that the court did not recognize the progress that she made toward reunification with the children. Although mother made some progress, she did not participate in therapy, which was necessary for her situation. The law requires that "within a reasonable period of time," a parent needs to remedy the situation that led to the children being placed in foster care. Code § 16.1-283(B) and (C). The children had been in foster care for approximately two years, and mother still had not accomplished the Department's goals for reunification.

### Question Presented 10

Since the evidence was sufficient to terminate mother's parental rights to the youngest four children and to place the oldest two children in permanent foster care, the court did not err in refusing to grant legal and physical custody of the children to mother.

### CONCLUSION

The record supports the trial court's finding that the evidence proved by clear and convincing evidence that mother's parental rights to the four youngest children should be terminated and that the termination of mother's parental rights was in the four youngest children's best interests. Code § 16.1-283. The record also supports the trial court's finding that it is in the two oldest children's best interests to be in permanent foster care. Code § 16.1-282.1. Accordingly, we summarily affirm the judgment. See Rule 5A:27.

Affirmed.