COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, AtLee and Raphael
Argued at Lexington, Virginia


ADRIAN EDGAR IBANEZ

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0135-21-3                       JUDGE STUART A. RAPHAEL
                                                        JANUARY 11, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

Joseph A. Sanzone (Sanzone & Baker, L.L.P., on brief), for
appellant.

Matthew J. Beyrau, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Adrian Edgar Ibanez appeals his driving-while-intoxicated conviction, arguing that the

Commonwealth failed to prove that he was operating the motor vehicle in question when it rolled

over.  Ibanez claims that, without such proof, the trial court erred both in admitting the certificate of

analysis showing his excessive blood-alcohol level and in convicting him of driving while

intoxicated.  Because the Commonwealth presented sufficient evidence that Ibanez operated the

vehicle, we reject both challenges and affirm the conviction.

I.  BACKGROUND

"When presented with a sufficiency challenge in criminal cases, we review the evidence in

the 'light most favorable' to the Commonwealth, the prevailing party in the trial court."

*Commonwealth v. Cady*, ___ Va. ___, ___ (Oct. 28, 2021) (citation omitted).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

After midnight on March 6, 2019, Virginia State Police Trooper Mark Dalton was dispatched to respond to an accident that had "just happened" on Sunburst Road in Campbell County. Trooper Dalton arrived at the scene about nine minutes later. He saw a Chevrolet pickup truck with damage on all sides and the roof, leading him to conclude that the truck had left the road and "rolled." The only people at the scene were Ibanez, who was in the back of an ambulance; fire department and emergency personnel; and one other witness (whose name and sex is not disclosed in the record). The witness was in a separate car.

Ibanez was the only one present who was injured. He had blood on his face, bloodshot eyes, and slurred speech. He smelled strongly of alcohol. When Trooper Dalton asked what happened, Ibanez said he didn't remember. Ibanez at first said that "he was on his way home from a friend's house," but then said that "he had just left Buffalo Wild Wings." Asked if he had been drinking, Ibanez replied that he had consumed "two or three beers." Trooper Dalton discovered that the truck was registered to a female whom he believed shared the same address as Ibanez. She was not at the scene, however, and there was no sign that she had been there.

Ibanez voluntarily submitted to a preliminary breath test. Based on the results, Trooper Dalton arrested Ibanez for driving under the influence. The arrest occurred at 2:00 a.m., roughly an hour and a half after the crash. After being arrested, Ibanez consented to give a blood sample. A nurse drew his blood using a kit approved by the Department of Forensic Science, and Trooper Dalton properly maintained custody of the sample and submitted it for lab analysis. The resulting certificate of analysis showed that Ibanez's blood-alcohol level was 0.214% by weight by volume.

Ibanez was charged with driving while intoxicated in violation of Code § 18.2-266. At his bench trial, Ibanez argued that the certificate of analysis should be excluded for lack of proof that he operated the truck. The judge overruled the objection and admitted the certificate into evidence. At the close of the Commonwealth's case, the defense moved to strike the Commonwealth's evidence

on the same ground. The trial court found the evidence sufficient to prove that Ibanez drove the truck. He reasoned that the accident occurred after midnight in rural Campbell County, Ibanez would have had to take public highways to get to that location from Buffalo Wild Wings, and Ibanez was the only one on the scene who could have been driving the truck. Accordingly, the court denied the motion to strike and found Ibanez guilty of driving while intoxicated. The court sentenced Ibanez to sixty days in jail with fifty days suspended, imposed a $500 fine with $250 suspended, and suspended his license for twelve months.

## II. ANALYSIS

Ibanez presents two assignments of error. First, he argues that the trial court erred by admitting the certificate of analysis into evidence under Code § 18.2-268.2.[1] Second, he says that the evidence failed to show that he drove while intoxicated. Both claims depend on whether the evidence sufficed to prove that Ibanez was operating the truck on a public highway when it rolled over. Because the Commonwealth's evidence supported that finding, we reject both assignments of error and affirm the conviction.

### A. The certificate of analysis was properly admitted under Virginia's implied-consent law.

The trial court's evidentiary ruling is reviewed for an abuse of discretion. *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019). Under that deferential standard, an appellate court will not reverse the trial court's ruling simply because it disagrees. *Id*. An abuse of discretion has occurred only if "reasonable jurists could not differ" in that conclusion. *Id*. (citation omitted). The "burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance" of evidence. *Id*. (quoting *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001)).

---

[1] Ibanez refers to the "blood sample" in his assignment of error, but he means the certificate of analysis. The Commonwealth does not quibble with the wording, and the imprecise language poses no obstacle to our deciding this case "on the merits." *Moore v. Commonwealth*, 276 Va. 747, 753 (2008).

The trial judge's factual findings when determining admissibility become "binding on appeal 'unless "plainly wrong" or without evidence to support them.'" *Id.* (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)). "[T]o the extent that the admissibility determination involves a question of law," we review the issue of law "*de novo*." *Id.* at 276.

Under Virginia's implied-consent law, a person who "operates a motor vehicle upon a highway" of the Commonwealth impliedly consents to give breath and blood samples for testing if arrested for driving while intoxicated within three hours of the alleged offense. Code § 18.2-268.2(A). "'Operator' or 'driver' means every person who either (i) drives or is in actual physical control of a motor vehicle on a highway or (ii) is exercising control over or steering a vehicle being towed by a motor vehicle." Code § 46.2-100. A certificate of analysis is not admissible, regardless of the defendant's actual consent, unless the Commonwealth has complied with the requirements of the implied-consent law. *Roseborough v. Commonwealth*, 281 Va. 233, 238-39 (2011). To be admissible, the Commonwealth had to present evidence that Ibanez was (1) operating a motor vehicle, (2) on a public highway and (3) validly arrested for an offense under Code § 18.2-266, (4) within three hours of the alleged offense. *Id.*

The trial court did not err in finding the Commonwealth's evidence sufficient to prove that Ibanez was operating a vehicle on a public highway.[2] Trooper Dalton received the dispatch after the accident "had just happened," arriving at the scene on Sunburst Road nine minutes later. He testified that Sunburst Road is "a public highway . . . in Campbell County." The pickup truck suffered damage to all sides and the roof, evidencing its involvement in a serious roll-over accident. Other than the emergency responders, only two other people were present at the scene: a witness in a separate vehicle, and Ibanez—his face covered in "a lot of blood," smelling strongly of alcohol,

---

[2] Ibanez does not dispute that Sunburst Road is a public highway or that he was arrested within the three-hour window.

eyes bloodshot, and speech slurred. When questioned, Ibanez first said that "*he* was on his way home from a friend's house," but then said that "*he* had just left Buffalo Wild Wings." (Emphasis added.) The truck was registered to a female who lived at the same address as Ibanez, further connecting Ibanez to the vehicle. There was no evidence that she was driving the truck when it rolled over.

The trial court reasonably concluded that Ibanez was driving the truck. Ibanez was the only one injured and the only one present who could have been driving it. And Ibanez said that *he* was on his way home and that *he* had just left Buffalo Wild Wings—not "we" were on our way home or *"we"* had just left— reasonably corroborating that he was the driver. Accordingly, the trial court did not abuse its discretion by admitting the certificate of analysis into evidence. The court was not plainly wrong to find the Commonwealth proved by a preponderance of evidence that Ibanez was operating the truck when it rolled over.

B. The evidence also sufficed to convict Ibanez of operating a motor vehicle under the influence of alcohol.

Ibanez's second assignment error claims that the evidence failed to support his driving-while-intoxicated conviction. This assignment of error involves the same facts as the first, but the Commonwealth's burden is proof beyond a reasonable doubt. Still, the trial court's judgment is "presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). Viewed from this "vantage point," the question is not whether *this* Court "believes that the evidence at the trial established guilt beyond a reasonable doubt." *Cady*, ___ Va. at ___ (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "Instead, the only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at ___ (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). These

- 5 -

principles apply "to bench trials no differently than to jury trials." *Pijor*, 294 Va. at 512 (quoting *Vasquez v. Commonwealth*, 291 Va. 232, 249 (2016)).

There was enough evidence here to enable a rational factfinder to conclude beyond a reasonable doubt that Ibanez was driving the truck on a public highway when it rolled over. To be sure, the Commonwealth presented no witness who saw Ibanez driving the truck on Sunburst Road; the prosecution's case was based on circumstantial evidence. But "[t]here is no distinction in the law between the weight or value to be given to . . . direct or circumstantial evidence." *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005). "[C]ircumstantial evidence is . . . entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Pijor*, 294 Va. at 512. The "hypotheses [that] must be reasonably excluded are those [that] flow from the evidence itself, and not from the imagination of defendant's counsel." *Id.* (quoting *Turner v. Commonwealth*, 218 Va. 141, 148 (1977)). "The reasonable-hypothesis principle . . . is 'simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

The trial court reasonably rejected Ibanez's hypothesis that someone else was driving who fled the scene when the truck rolled over. Ibanez's counsel suggested at oral argument that the "witness" might have been driving the truck. But Trooper Dalton testified that the witness was in a separate vehicle. That the accident occurred after midnight in a rural area reinforced the trial court's inference that no one else was around who could have been driving. The court also reasonably relied on Ibanez's admission that "he" was on his way home from a friend's house and that "he" had just left Buffalo Wild Wings. Combined with Ibanez's admission that he drank two or three beers, the blood on his face shortly after the accident occurred, and the certificate of analysis showing a

blood-alcohol level of 0.214%, the trial court could reasonably conclude that Ibanez drove the truck while intoxicated.[3]

Ibanez mistakenly insists that this case is distinguishable from *Ramos v. Commonwealth*, No. 1774-13-4 (Va. Ct. App. Sept. 22, 2015). *See* Ibanez Br. 6.[4] Ramos, like Ibanez, was convicted of driving while intoxicated even though no witness saw him driving the vehicle. We upheld the conviction because the circumstantial evidence sufficed to prove that he was the driver. Like Ibanez, Ramos said that "*he* 'had hit something,'" later changing his statement to "*he* 'did not hit anything.'" Slip op. at 6 (emphasis added). We observed that "it would be odd for a passenger in a car or a pedestrian to state that *he* 'had hit something' that had caused damage to a car." *Id.*

---

[3] The Commonwealth argues that what Ibanez *failed* to tell Trooper Dalton should be used against him—that Ibanez "did not assert that someone else was driving, he did not assert that anyone else was with him in the vehicle, and he did not ask Trooper Dalton if anyone else was injured or okay following the accident." Commonwealth Br. 7-8. The parties, however, did not brief whether using the accused's silence in response to pre-custodial questioning by police would violate the privilege against self-incrimination after *Salinas v. Texas*, 570 U.S. 178 (2013). *See id.* at 181 (plurality opinion) (concluding that the prosecution did not violate the privilege against self-incrimination by relying on the defendant's pre-custodial silence in response to police questioning because the defendant "did not expressly invoke the privilege against self-incrimination in response to the officer's question"); *id.* at 192 (Thomas, J., concurring in the judgment) (concluding that the "prosecutor's comments regarding [the defendant's] pre-custodial silence did not compel [the defendant] to give self-incriminating testimony").

Neither our Court nor our Supreme Court has addressed this constitutional question since *Salinas*. *See, e.g.*, *Taylor v. Commonwealth*, 26 Va. App. 485, 499 (1998) (holding that "the government's interest in using the appellant's pre-arrest silence in response to a police officer's question as substantive evidence of guilt is substantially outweighed by the burden which such practice imposes on the privilege against self-incrimination"). *Compare Virginia Criminal Benchbook for Judges & Lawyers* § 7.02[1][e][iii], at 7-6 (2021) ("The commonwealth attorney's use of the defendant's noncustodial silence as evidence of guilt does not violate the Fifth Amendment." (citing *Salinas*)), *with* Ronald J. Bacigal & Corinna Barrett Lain, *Virginia Practice Series: Criminal Procedure* § 7:1 & n.18 (2021-2022 ed.) (quoting *Taylor*), *and* Craig D. Johnston, *Virginia Practice Series: Trial Handbook for Virginia Lawyers* §§ 13:14, 28:14 (2021) (citing *Taylor*).

Because this question was not briefed and other evidence suffices to prove that Ibanez operated the truck, we do not rely on his silence in response to pre-custodial police questioning to support the conviction.

[4] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value. Rule 5A:1(f)." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012).

(emphasis added). It would be just as unusual here for a passenger or pedestrian—rather than the driver—to say that *he* was on his way home and *he* had just left Buffalo Wild Wings. As in *Ramos*, Ibanez's admission, combined with the other circumstantial evidence, supports the trial court's finding that Ibanez was the driver.

Ibanez misplaces his reliance on *Powers v. Commonwealth*, 211 Va. 386 (1970), arguing that the Commonwealth must provide "some evidence explaining the accident." Ibanez Br. 6. In *Powers*, the Commonwealth tried to prove the charge of reckless driving by the fact of the accident itself. Rejecting that as insufficient, the Court said that the "essence of the offense of reckless driving lies *not in the act of operating a vehicle*, but in the manner and circumstances of its operation." *Powers*, 211 Va. at 388 (emphasis added). By contrast, the only question here is whether Ibanez was driving the truck when it rolled over, not why the accident occurred nor whether Ibanez's conduct was reckless. So *Powers* is inapposite.

The trier of fact is entitled to "draw reasonable inferences from basic facts to ultimate facts," and "those inferences cannot be upended on appeal unless we deem them so attenuated that they push into the realm of *non sequitur*." *Commonwealth v. Perkins*, 295 Va. 323, 332 (2018) (citation and quotation marks omitted). The trial court's inference here that Ibanez was driving the truck when it rolled over "falls securely within the 'bell-shaped curve of reasonability.'" *Id.* (quoting *Du v. Commonwealth*, 292 Va. 555, 564 (2016)).

### III. CONCLUSION

We affirm Ibanez's conviction.

*Affirmed.*